UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

|  |  |
|---|---|
| VIRGINIA SEEGER, <br>     Plaintiff, <br><br> v. <br><br> MARSHALLS OF MA, INC., <br>     Defendant. | C.A. No. 1:23-cv-00314-MSM-LDA |

## MEMORANDUM AND ORDER

Mary S. McElroy, United States District Judge.

The plaintiff, Virginia Seeger, sues the defendant, Marshalls of MA, Inc. ("Marshalls") alleging that Marshalls retaliated against her for filing charges of age and disability discrimination with the Rhode Island Commission for Human Rights ("RICHR") in September of 2021 and August of 2022. Marshalls moves for summary judgment pursuant to Fed. R. Civ. P. 56. (ECF No. 23.)

For the reasons below, the defendant's Motion for Summary Judgment is GRANTED.

### I. BACKGROUND

Ms. Seeger has worked as an associate at a Marshalls store located in Narragansett, Rhode Island since July of 2003. (ECF No. 24-3 at 10.) She is a part-time Merchandise Associate, and her typical duties require her to work on the sales floor in the home goods department, but she is cross trained to assist with the register, as needed. (ECF No. 24-3 at 84, 87.) On September 20, 2021, Ms. Seeger

filed a charge of discrimination with the RICHR alleging age and disability discrimination. (ECF Nos. 24-3 at 13; 24-4.) Around a year later, Ms. Seeger filed a second charge of discrimination with RICHR alleging age and disability discrimination and retaliation on August 15, 2022. (ECF No. 24-7.) Ms. Seeger claims that she was retaliated against because of her claims with the RICHR. She asserts retaliation by way of management's interactions with her, a temporary reduction in hours, and her rate of pay. Additional facts will be discussed in the context of the issues raised in the defendant's motion for summary judgment and the parties' accompanying memoranda.

## II. SUMMARY JUDGMENT STANDARD

The role of summary judgment in civil litigation is "to pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial." *Garside v. Osco Drug Inc.*, 895 F.2d 46, 50 (1st Cir. 1990). Summary judgment can be granted only when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56. "A dispute is genuine if the evidence about the fact is such that a reasonable jury could resolve the point in the favor of the non-moving party. A fact is material if it carries with it the potential to affect the outcome of the suit under the applicable law." *Santiago–Ramos v. Centennial P.R. Wireless Corp.*, 217 F.3d 46, 52 (1st Cir. 2000). A court views the facts at summary judgment "in the light most favorable to, and drawing all reasonable inferences in favor of, the nonmoving party."

*Feliciano de la Cruz v. El Conquistador Resort & Country Club*, 218 F.3d 1, 5 (1st Cir. 2000).

"The moving party 'bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of [the record] which it believes demonstrate the absence of a genuine issue of material fact.'" *DeNovellis v. Shalala*, 124 F.3d 298, 306 (1st Cir. 1997) (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986)). "Once the moving party has pointed to the absence of adequate evidence supporting the nonmoving party's case, the nonmoving party must come forward with facts that show a genuine issue for trial." *Sensing v. Outback Steakhouse of Fla., LLC*, 575 F.3d 145, 152 (1st Cir. 2009). "At this stage, the nonmoving party 'may not rest upon mere allegation or denials of [the movant's] pleading, but must set forth specific facts showing that there is a genuine issue of material fact as to each issue upon which he would bear the ultimate burden of proof at trial.'" *DeNovellis*, 124 F.3d at 306 (quoting *Anderson v. Liberty Lobby Inc.*, 477 U.S. 242, 256 (1986)). "'[N]either conclusory allegations [nor] improbable inferences' are sufficient to defeat summary judgment." *Carroll v. Xerox Corp.*, 294 F.3d 231, 236–37 (1st Cir. 2002) (quoting *J. Geils Band Emp. Benefit Plan v. Smith Barney Shearson, Inc.*, 76 F.3d 1245, 1251 (1st Cir.1996)). "The test is whether, as to each essential element, there is 'sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party.'" *DeNovellis*, 124 F.3d at 306 (quoting *Anderson*, 477 U.S. at 249–50).

## III. DISCUSSION

Marshalls has moved for summary judgment on the Ms. Seeger's remaining claims[1], brought under the retaliation provisions of the Age Discrimination in Employment Act ("ADEA") and the Americans with Disabilities Act ("ADA"). 29 U.S.C. § 623(d); 42 U.S.C. § 12203(a). The Court considers each of the remaining claims in turn.

### A. The Plaintiff's Retaliation Claims

Under the framework established by *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973), the burden is on the plaintiff to establish a prima facie case of discrimination. *Raytheon Co. v. Hernandez*, 540 U.S. 44, 49 n.3 (2003). "The burden then shifts to the employer to articulate a legitimate, nondiscriminatory reason for its employment action." *Id.* If the employer does so, the plaintiff can rebut the employer's reason by offering evidence that the action was pretextual. *Id.* "To establish a prima face case, the plaintiff must show: '(1) that she was 'disabled' within the meaning of the ADA; (2) that she was able to perform the essential functions of her job with or without accommodation; and (3) that she was discharged or adversely affected, in whole or in part, because of her disability [(i.e., suffered an adverse employment action)].'" *Lopez-Lopez v. Robinson Sch.*, 958 F.3d 96, 104 (1st Cir. 2020) (quoting *Ruiz Rivera v. Pfizer Pharms., LLC*, 521 F.3d 76, 82 (1st Cir. 2008)).

---

[1] Ms. Seeger originally had also asserted various claims for failure to accommodate, age, and disability-based discrimination. The Court previously dismissed these claims under Fed. R. Civ. P. 12(b)(6) for failure to state a claim upon which relief could be granted. (ECF No. 13.) Therefore, only Ms. Seeger's retaliation claim is before the Court for decision.

4

### 1. The Plaintiff's Allegations Regarding Her Interactions with Management

Ms. Seeger described three incidents with an Assistant Store Manager, Stephen Fossa, as part of the basis for her allegations against Marshalls. About a month after she filed her first charge of discrimination against Marshalls, in October or November 2021, Ms. Seeger crossed paths with Mr. Fossa in the store and he said to her, "Oh, it always has to be about you," or "everyone has to please you all the time[.]" (ECF No. 24-3 at 19-20.) Mr. Fossa did not reference Ms. Seeger's charge of discrimination and the defendant maintains that Mr. Fossa was not even aware of the allegations at the time this interaction occurred. *Id.* at 20. Ms. Seeger insists that Mr. Fossa's attitude during this interaction suggested that he was referencing her allegations. *Id.* at 21.

Ms. Seeger also cited an interaction with Mr. Fossa on November 21, 2021, where he asked her to ring at the cash register "in a very cocky manner." *Id.* at 17. She claims this conduct was retaliation due to her first agency charge. *Id.* Ms. Seeger further testified that Mr. Fossa admonished her to focus on her work when she spoke to another cashier and to "[m]ove faster[,] get those hangers over there." *Id.* Although she was upset about the situation, Ms. Seeger continued to help customers at the register for twenty minutes or so, until Mr. Fossa let her return to the sales floor. *Id.* at 18-19.

Ms. Seeger also stated that one morning when she arrived for her shift, she had to wait fifteen minutes or so until Mr. Fossa let her in the building, which was not yet open to customers. *Id.* at 24. Mr. Fossa said either, "Oh, gee, you've been

waiting here quite a while, haven't you" or "You've been waiting here quite a[] while, huh?" *Id.* at 27-28. Ms. Seeger assumed that Mr. Fossa knew she was waiting outside because on other occasions when she worked the opening shift, it did not take as long to be let inside the building. *Id.* She further claims that this interaction was retaliation related to her first agency charge. *Id.*

A claim of unlawful retaliation must demonstrate "at a minimum, competent evidence that the alleged retaliator[] knew of the plaintiff's protected activity." *Alvarado v. Donahoe*, 687 F.3d 453, 459 (1st Cir. 2012). "The reasons underlying such a requirement are obvious: if a supervisor or other employee is unaware of the fact that a plaintiff engaged in protected conduct, any actions attributable to him could not plausibly have been induced by retaliatory motives." *Id.* (citing *Miller v. Am. Fam. Mut. Ins.*, 203 F.3d 997, 1008 (7th Cir. 2000)).

While Ms. Seeger contends that Mr. Fossa was knew of her retaliation allegations when these interactions occurred, Marshalls claims that he knew nothing about her retaliation allegations leading up to these interactions. Marshalls insists that the record clearly shows that Mr. Fossa was unaware of Ms. Seeger's allegations of discrimination when he made these statements to her, and that no member of the store's management team even discussed Ms. Seeger's agency charges or the underlying lawsuit with her. Moreover, at her deposition, Ms. Seeger conceded that her belief that these statements were retaliation was not based on any factual information or firsthand knowledge.

6

While there may be a genuine dispute about whether Mr. Fossa was aware of Ms. Seeger's retaliation allegations when he admonished her, these isolated incidents do not rise to the level of an adverse employment action required to assert a claim for retaliation. The fleeting interactions with Mr. Fossa did not impact Ms. Seeger's ability to carry out her job duties or otherwise disrupt her work. For example, an adverse employment action in the retaliation context might include "termination of employment, a demotion evidenced by a decrease in wage or salary, a less distinguished title, a material loss of benefits, significantly diminished material responsibilities, or other indices that might be unique to a particular situation." *Morales-Vallellanes v. Potter*, 605 F.3d 27, 36 (1st Cir. 2010) (quoting *Lapka v. Chertoff*, 517 F.3d 974, 986 (7th Cir. 2008)). There is no evidence that Ms. Seeger's isolated interactions with Mr. Fossa were anything more than "petty slights, minor annoyances, and [a] simple lack of good manners," which do not qualify as adverse employment actions in the retaliation context. *Id.* Moreover, Ms. Seeger's impression of Mr. Fossa's demeanor during these interactions does not rise to the level of an adverse employment action. *See Shervin v. Partners Healthcare Sys., Inc.*, 804 F.3d 23, 49 (1st Cir. 2015) (explaining that "subjective feelings of disappointment or disillusionment" with employer does not establish adverse employment action); *see also Morales*, 605 F.3d at 36. Rather, "an adverse action is one that 'standing alone, actually causes damage.'" *Shervin*, 804 F.3d at 49.

The record is undisputed that Ms. Seeger's interactions with Mr. Fossa, although upsetting to her, did not impact her ability to carry out her job functions or

7

assist customers. In fact, Ms. Seeger agreed that after Mr. Fossa admonished her for speaking with another employee, she continued to assist customers at the register. (ECF No. 24-3 at 18-19.) Likewise, she continued with her shift and carried out her typical job duties after Mr. Fossa's passing comments on the sales floor and his delay letting her into the store. (ECF No. 24-3 at 19-20, 27.) As such, Ms. Seeger has not demonstrated there is a genuine issue for trial. *DeNovellis*, 124 F.3d at 306 (holding that a plaintiff may not rest upon "conclusory allegations, improbable inferences, and unsupported speculation" to avoid summary judgment.).

### 2. The Plaintiff's Retaliation Claims Regarding Scheduling and Reduction in Hours

Ms. Seeger also made several claims regarding retaliatory scheduling against the defendant. (ECF No. 24-3 at 31.) Over several weeks in February 2022 Ms. Seeger experienced a reduction in her hours. (ECF No. 24-2 at 20-26; ECF No. 24-7.) This came after a busy holiday season, and it is typical in the retail setting that the period following the holiday season is significantly slower. (ECF No. 24-3 at 34; ECF No. 24-6 ¶ 4.) During the same time, the defendant stated that twenty-six other associates received only two shifts, while eighty-two others received only one shift. (ECF No. 24-6 ¶ 5.) During this time all full-time employees also experienced a diminution of their total hours. (ECF No. 24-6 ¶ 5.)

A slight diminution of hours over a short period of time cannot constitute an adverse employment context to establish a retaliation claim. For example, in *Cham v. Station Operators, Inc.*, the First Circuit addressed a similar claim under Title IX where an employee lost three shifts during Labor Day, Thanksgiving, and Christmas.

8

685 F.3d 87, 94-95 (1st Cir. 2012). The First Circuit held that "[s]uch a reduction simply does not rise to the level of an adverse employment action in the context of a workplace where schedules fluctuate and no employee is entitled to any given shift." *Id.* The same holds true in this case. The plaintiff here was a part-time employee and does not have a guaranteed number of hours that she was scheduled to work in a particular week. (ECF No. 24-3 at 87.) Rather, at Marshalls, part-time employees' schedules fluctuate based on business needs and other factors, such as the holiday season. (ECF No. 24-6 ¶¶ 4-5.) Only full-time associates are guaranteed a minimum number of hours per week. (ECF No. 24-3 at 87.) Yet even full-time employees experienced a reduction in their hours after the holiday season subsided. (ECF No. 24-6 ¶ 5.) As such, Ms. Seeger's slight reduction in hours during this time cannot establish an adverse employment action in the context of a retaliation claim. *See Cham*, 685 F.3d at 94-95.

### 3. The Plaintiff's Retaliation Claims Regarding Her Rate of Pay

As to Ms. Seeger's claims of retaliatory pay, she insists that her hourly rate of pay has been a form of retaliation related to her agency charges. (ECF No. 24-3 at 110.) Throughout her employment at Marshalls, Ms. Seeger has received annual pay raises between two percent and four percent, which tracks with pay raises awarded to other employees. (ECF No. 24-9.) When questioned about how her rate of pay is retaliatory, Ms. Seeger testified that her retaliation claim related to her rate of pay is based on her belief that she should be paid an hourly rate closer to a national average for retail employees that she found on a recruiting website. (ECF No. 24-3

at 91.) Ms. Seeger also indicated that she felt Marshalls should have increased her pay in response to the within litigation and her complaints that she is underpaid. *Id.* at 93. In part because she has been with the company for over twenty-one years, and because she felt the lawsuit and underlying allegations, without increasing her pay, would make the company "look bad." *Id.* at 93, 110.

As of October 9, 2024, Ms. Seeger's pay rate was $15.74 per hour, which is higher than most of the other associates who work in the store. (ECF No. 24-6 ¶ 13.) Moreover, the four associates with higher rates of pay than Ms. Seeger transferred to this Marshalls location from other states, with higher minimum wages, and thus management did not set their base rate of pay. *Id.* ¶ 14. Even so, the discrepancy among their wages is minimal, between 26 and 57 cents per hour. *Id.* While Ms. Seeger contends that she should be entitled to a higher rate of pay because of her long tenure working for Marshalls and that her rate of pay is unfair, the facts are undisputed that she received yearly raises, commensurate with that of other similarly situated employees. Ms. Seeger has not established that she suffered an adverse employment action related to her filing of agency charges against the defendant and thus, there is no genuine issue for trial. *See DeNovellis*, 124 F.3d at 306 (holding that a party opposing summary judgment may not rest upon mere allegation or denials of movant's pleading but must set forth specific facts showing that there is genuine issue of material fact as to each issue upon which he would bear ultimate burden of proof at trial).

B.  **The Plaintiff's New Retaliation Claims Regarding Her Employment in 2024**

Lastly, Ms. Seeger asserted "a new retaliation" claim, which she alleges began in the week of January 21, 2024. (ECF No. 15 at 1.) But she failed to address these allegations in her Complaint, nor did she seek leave to amend the Complaint to add additional claims of retaliation. Although the Court acknowledges that Ms. Seeger is pro se, it is well settled that a litigant cannot present a new theory of liability "for the first time in opposition to a summary judgment motion." *See Carrozza v. CVS Pharmacy, Inc.*, 992 F.3d 44, 59 (1st Cir. 2021). *See also Katz v. Belveron Real Est. Partners, LLC*, 28 F.4th 300, 309-10 (1st Cir. 2022) (holding that unpled claims were not properly before district court).

More importantly, the plaintiff failed to exhaust her administrative remedies by first presenting the charges to the RICHR. The allegations Ms. Seeger now seeks to assert arise out of entirely different conduct and events from the allegations she brought in her initial agency charges in September of 2021 and August of 2022. The record shows that Ms. Seeger did not raise these additional retaliation allegations to the appropriate administrative agency. Thus, the plaintiff is barred from now asserting these claims. *See Jorge v. Rumsfeld*, 404 F.3d 556, 564 (1st Cir. 2005) ("[A] plaintiff's unexcused failure to exhaust administrative remedies effectively bars the courthouse door.").

## IV.  CONCLUSION

Because the plaintiff's claims do not give rise to a genuine issue as to any material fact, the defendant is entitled to judgment as a matter of law.  Thus, the defendant's Motion for Summary Judgment (ECF No. 23) is GRANTED.

IT IS SO ORDERED.

_____
Mary S. McElroy,
United States District Judge

March 17, 2025